IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MARCIE C.[1],<br>Plaintiff, | )<br>)<br>) |
| v. | )  Civil Action No. 7:20cv00026<br>) |
| KILOLO KIJAKAZI[2],<br>Acting Commissioner of Social Security, | )<br>)<br>) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Marcie C. ("Marcie") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Marcie alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) weigh the medical opinions in the record, including her treating physicians' opinions; (2) assess her mental impairments, specifically her mood disorder; and (3) identify the correct date last insured.

I conclude that substantial evidence does not support the Commissioner's decision to discount the opinions of her treating physicians. Accordingly, I **RECOMMEND GRANTING IN PART** Marcie's Motion for Summary Judgement (Dkt. 11) and **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. 15).

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

## **STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Marcie failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." Biestek, 139 S. Ct. 1148. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s]

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted).

## **CLAIM HISTORY**

Marcie filed for DIB in October 2015, claiming that her disability began on April 15, 2014, due to daily migraines, depression, Guillain-Barre Syndrome, low thyroid, low vitamin D2, nausea, and chronic fatigue. R. 179, 206, 210. The ALJ incorrectly found Marcie's date last insured was December 31, 2017; however, the Appeals Council corrected this error in its review of the ALJ's decision, noting Marcie's actual date last insured was June 30, 2018.[4] R. 4–7; 13.[5] The state agency denied Marcie's claim at the initial and reconsideration levels of administrative review. R. 65–76, 78–96. ALJ Kevin Boucher held a hearing on May 15, 2018 to consider Marcie's claim for DIB, where vocational expert Patricia Murphy testified. Marcie was represented by counsel at the hearing. On October 11, 2018, the ALJ entered his decision

---

[4] Marcie was 50 years old on her date last insured, which is considered an individual closely approaching advanced age under the Act. R. 7. The ALJ incorrectly noted Marcie was 49 years old, using the wrong date last insured. R. 22, 7.

[5] Marcie must show that her disability began on or before her date last insured and existed for twelve continuous months to receive DIB. R. 13, 233; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

considering Marcie's claim under the familiar five-step process[6] and denying her claim for benefits. R. 13–24.

The ALJ found that Marcie suffered from the severe impairments of migraine headaches and cervical spine disorder. R. 15. The ALJ found that, regarding her mental impairments, Marcie's affective mood disorder was non-severe, as it had been well managed conservatively and did not interfere with daily functioning or functioning in other areas. R. 15–16. In the four broad areas of mental functioning, the ALJ found Marcie had no limitations in understanding, remembering, or applying information, interacting with others, and concentrating, persisting or maintaining pace, and a mild limitation in adapting or managing oneself. R. 16–17. The ALJ determined that Marcie's impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 17–18. Specifically, the ALJ considered listing 1.04 (disorders of the spine).

The ALJ concluded that Marcie retained the residual functional capacity ("RFC") to perform a limited range of medium work. R. 18. Specifically, the ALJ found Marcie was able to lift and carry 50 pounds occasionally and 25 pounds frequently. Id. Marcie can frequently balance, but can only occasionally climb ramps, stairs, ladders, ropes, and scaffolds, can occasionally stoop, kneel, crouch, crawl, and should avoid concentrated exposure to vibration and hazards like machinery and unprotected heights. Id. The ALJ determined that Marcie was

---

[6] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

capable of performing her past relevant work as an administrative secretary, receptionist, and invoice clerk. R. 22. The ALJ also determined that Marcie could perform other jobs that exist in significant numbers in the national economy, such as dining room attendant, laundry aid, and hand packer. R. 23. Thus, the ALJ concluded that Marcie was not disabled. R. 23.

Marcie appealed and the Appeals Council granted the request for review because it found an "error of law," specifically the ALJ incorrectly identified the date last insured. R. 173–76. The Appeals Council notified Marcie that it had reviewed the entire record, hearing testimony, and counsel's brief, and intended to impose a decision finding Marcie was not under any disability between her alleged onset date and the correct date last insured, June 30, 2018. R. 173–75. On December 2, 2019, the Appeals Council adopted the ALJ's findings that Marcie was not disabled, and extended those findings through June 30, 2018.[7] R. 1–7. The Appeals Council decision became the final decision of the Commissioner, which Marcie appealed to this court. 20 C.F.R. § 404.981 (noting that "the Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court").

## **ANALYSIS**

Marcie alleges that the ALJ erred by improperly weighing the medical opinions in the record, failing to find her mood disorder was a severe impairment, and identifying the wrong date last insured.

**A. Medical History**

---

[7] The Appeals Council also adopted the findings of the ALJ and the testimony of the vocational expert that Marcie was capable of performing her past relevant work, as well as other jobs in the national economy, with the exception of the "representative occupation of laundry aid" because it contains "frequent stooping" which is not consistent with Marcie's RFC. R. 5–6.

5

Marcie has a long history of treatment for chronic migraine headaches and depression, even prior to her alleged onset date.[8] Marcie saw her treating doctors, William Ball, M.D. (family medicine) and Rebecca W. Tanner, M.D., (a physiatrist) on multiple occasions with headache complaints during the relevant period. Marcie also sought treatment for neck and back pain from a chiropractor. Marcie reported being treated for depression "on and off for over 25 years," since age 21. R. 498. During the relevant period, Marcie sought counseling for depression, with counselor J. Steve Strosnider, M.A., LPC.

1. <u>Medical Opinion Evidence</u>

In October 2016, William Humphries, M.D. performed a consultative physical examination. R. 483–85. Dr. Humphries, noting that Marcie has suffered from migraine headaches for her entire life, even in kindergarten, diagnosed chronic headache and cervical strain, both of unknown etiology. R. 483. On exam, she had a tender neck and back, but normal coordination, strength, and vision. Dr. Humprhies concluded Marcie would be capable of a limited range of medium work. R. 485. The ALJ gave Dr. Humphries' opinion partial weight, noting his conclusion was less restrictive than warranted and does not include accommodation for Marcie's "musculoskeletal symptoms and migraine headache triggers."[9] R. 20.

Marvin Gardner, Jr., Ph.D., performed a consultative psychological examination, also in October 2016. R. 497–502. Marcie reported daily migraine headaches, with pain 10/10 about 50% of the time. R. 498–99. She also reported difficulty sleeping at night, requiring naps during the day, and feeling depressed and anxious. R. 500. On examination, Marcie had generally

---

[8] Marcie's treating doctor, William Ball, M.D., referred her to the neurology clinic at the University of Virginia in 2012 for evaluation of her chronic headaches. R. 377. She indicated she has a history of chronic continuous migraine headaches since age 8, that do not respond to narcotics or antiemetics. <u>Id</u>.

[9] As discussed more below, the ALJ does not state what these triggers are, nor does Dr. Humphries; instead, Dr. Humphries states the headaches are of "unknown etiology." R. 485.

6

normal cognitive functioning, but with only fair understanding of her mental illness, fair judgment, and moderately impaired abstract thinking. R. 501. Dr. Gardner diagnosed persistent depressive disorder with intermittent major depressive episodes, pain disorder with related psychological factors, and limited obsessive-compulsive personality traits. Id. Dr. Gardner concluded Marcie was likely to miss over 3 days of work per week, due to naps required because of her pain disorder, was unable to perform work activities for an 8-hour day, due to her pain disorder and depression, and was unable to deal with the usual stresses encountered in competitive work. R. 502. The ALJ does not attribute a precise weight to Dr. Gardner's opinion, but notes it is "too restrictive." R. 20.

Mr. Strosnider, a Licensed Professional Counselor, wrote a letter dated March 30, 2018 indicating that Marcie's response to therapy has been positive and her level of depression is mild to moderate, but that he has "never felt . . . her depression was of the magnitude to warrant a disability determination."[10] R. 674. The ALJ, incorrectly indicating that Mr. Strosnider was a treating doctor, gave his opinion great weight. R. 20. The ALJ interpreted the opinion as supporting his finding that Marcie's depression "has no effect on her functioning." R. 20.

Treating practitioners Dr. Ball and Dr. Tanner both provided medical source statements in April 2018. R. 700–01. Dr. Ball and Dr. Tanner both found that Marcie would need additional breaks beyond those normally provided, would miss work more than three times a month, and would be off task more than 30% of the workday. R. 700, 701. Dr. Ball wrote these limitations

---

[10] The letter stated Mr. Strosnider saw Marcie on six occasions for counseling, beginning in March 2016 with the most recent occasion in October 2017, five months prior to the letter. R. 674. However, as pointed out by Marcie in her brief, the record shows five counseling sessions, only one of which occurred on the dates listed by Mr. Strosnider. R. 472–476. What this conflict means regarding the reliability of the letter is unclear, as it was never addressed by the ALJ.

7

were all due to Marcie's daily migraines and depression. R. 701. The ALJ gave both of these opinions partial weight. R. 20–21.

In June 2016, state agency physician Luc Vinh, M.D. reviewed the record and concluded Marcie was capable of a limited range of light work. R. 75. In November 2016, state agency physician James Wickham, M.D. concluded, also after reviewing the record, that Marcie was capable of a limited range of medium work. R. 91. The ALJ found both opinions were "less restrictive" than warranted, giving Dr. Wickham partial weight and giving Dr. Vinh unspecified weight. R. 21.

State agency psychologists, Stonsa Insinna and Howard Liezer also reviewed the record during this 2016 timeframe. Dr. Isinna found Marcie's affective disorder was nonsevere. R. 70. The ALJ gave this opinion great weight, again stating that it was consistent with the "evidence in the record that her affective disorder caused no limitations in her functioning." R. 21. In contrast, Dr. Leizer found Marcie's affective disorder was a severe impairment. R. 87. He also noted moderate limitations in Marcie's ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, perform at a consistent pace, and interact appropriately with the public, coworkers, and supervisors. R. 92–93. Dr. Leizer indicated that Marcie could maintain attention and concentration for two hour periods, could recall short and simple instructions, but would have difficulty with complex or detailed information, and should avoid frequent contact with the public and should work in a well-spaced location with few co-workers. Id. The ALJ gave this opinion partial weight, finding "this opinion clearly more restrictive [than] warranted by the evidence." R. 21.

### B. Treating Physicians

Marcie argues that the ALJ erred by failing to give controlling weight to the opinion of

her treating physicians, Drs. Ball and Tanner. Marcie emphasizes that Dr. Ball treated Marcie for over nine years, that both physicians found Marcie had work limitations that were disabling, and that their opinions were consistent with the medical evidence and supported by medically acceptable clinical and diagnostic techniques. The Commissioner counters that substantial evidence supports the ALJ's assessment of Marcie's treating physicians opinions, and that the ALJ correctly explained that the opinions were "more restrictive than what was supported by the objective evidence." D.'s Br. at 19.

The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."[11] 20 C.F.R. § 404.1527(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (noting that "the ALJ is supposed to consider whether a medical opinion is consistent, or inconsistent, with other evidence in the record in deciding what weight to accord the opinion"). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D.W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of

---

[11] The social security regulations regarding the evaluation of medical opinion evidence have been amended for claims filed after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c (setting out rules for claims filed on or after March 27, 2017, including that no specific evidentiary weight, including controlling weight will be given to any medical opinions). However, as this claim was filed prior to the effective date of the amended rule, I will apply the rules in 20 C.F.R. §§ 404.1527(c), 416.927.

controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D.Va. Dec. 29, 2010).

      Here, the ALJ did not adequately consider these factors, or the record, in determining that both treating doctors' opinions merited only partial weight.[12] In fact, as a prelude to discussing the opinions, the ALJ wrote "the common denominator is that none of these physicians has offered an opinion that [Marcie] is restricted from working." R. 20. Of course, this is wrong, as both Marcie's treating doctors, Drs. Ball and Tanner found that Marcie would need additional breaks beyond those normally provided, would miss work more than three times a month, and would be off task more than 30% of the workday. R. 700, 701. Likewise, the consultative examiner, Dr. Gardner, found Marcie would miss more than three days of work per week and could not perform work activities for an eight hour day, due to her pain disorder and depression. These are work preclusive opinions; at the hearing, the vocational expert testified that no jobs were available to an individual who was off task more than 30% of the workday or could not perform the work throughout an eight-hour workday. R. 61–63. Thus, in direct contradiction to the ALJ's statement, there are three work preclusive opinions in the record, two from treating doctors and one from the consultative examiner hired by the Commissioner.

---

[12] I discuss the ALJ's reasoning here, even though I recognize that the Appeals Council's decision is the final decision in this case, as the Appeals Council specifically adopted the evidentiary facts and reasoning set out by the ALJ. R. 4–7.

10

Compounding this error, the ALJ incorrectly states that Mr. Strosnider, Marcie's counselor, is a treating doctor. The ALJ gives Mr. Strosnider's opinion "great weight," using it to support a finding that Marcie's depression "has no effect on her functioning" and thus merits no accommodations in the RFC. R. 20. That the ALJ wrongly categorized Mr. Strosnider as a doctor and gave him "great weight" is especially problematic because, in doing so, the ALJ discounted the opinions of actual doctors, including Dr. Leizer, a state agency doctor, and Dr. Gardner, a consultative examiner, who found Marcie's mental impairments were severe, resulting in significant effects on her functioning.[13]

To justify discounting Dr. Tanner's opinion, the ALJ writes that it is "more restrictive than what is warranted by the treatment records from 2018, which highlight progress in reduction from headaches and her back impairment due to medication management." R. 21. In support, the ALJ references, without specification, Exhibit 21F, which contains 25 pages of medical records. R. 675–99. However, elsewhere in the record, the ALJ does point to a specific medical record from Dr. Tanner, from March 29, 2018, which indicates that Marcie has had a recent migraine, her migraines are "random and associated with lights, aura, and severe debility, requiring rest when they hit her" and, that while the frequency has diminished, they "remain severe up to 3–10 times a month." R. 675. The ALJ uses this record to support his statements that, "[M]arcie's ability to persist with daily tasks has been possible to due to use of hormone therapy that has decreased her aches" and "although treatment has not prevented all migraine headaches, the evidence does not illustrate her episodes cause debilitating limitations, but emphasize she must

---

[13] The Commissioner characterizes the ALJ's reference to Mr. Strosnider as a "typographical error" noting that previously in the opinion, the ALJ stated that Mr. Strosnider was a counselor at Psychological Health Roanoke. However, on balance the record suggests this is not merely a typographical error, as the ALJ refers to Mr. Strosnider as "one of claimant's practitioners" along with her two actual treating physicians, and calls him "Dr." twice. R. 20.

11

avoid environmental triggers." R. 19. However, contrary to the ALJ"s conclusion, the record makes no mention of environmental triggers, stating the migraines are random. Troublingly, though the ALJ remarks several times in his opinion that Marcie's headache symptoms have been managed with "avoidance of environmental triggers" nowhere does the ALJ state what the environmental triggers are, or how the RFC accommodates those supposed environmental triggers.[14] Instead, the record refers to Marcie's headaches as being of unknown etiology, and Marcie did not specify any environmental triggers for her migraines at the hearing. R. 485.

Thus, the record used by the ALJ to discount Dr. Tanner's opinion, in fact supports Dr. Tanner's statement that Marcie would miss work more than three times a month due to her migraines. The record even states, "[Marcie] is not able to hold down work outside the home due to above limitations." R. 675. While this medical record may contain the phrase that her migraine "frequency has diminished" the ALJ cannot use those words in isolation to support his decision, ignoring the rest of the record indicating that the migraines still occur three to ten times a month, are unpredictable, and are severely debilitating.[15] See Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017) (noting that a "significant part of the ALJ's misapplication of the treating physician rule was his reliance on cherry-picked evidence skewed to contradict [the claimant's] doctors"); Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020) (remanding and noting that the ALJ erred by selectively citing from the evidence of record, when the doctor's notes were "more nuanced" than represented by the ALJ).

---

[14] The RFC indicates that Marcie "must avoid concentrated exposure to vibration and hazards like machinery and unprotected heights." R. 18. However, again, nowhere is it explained what specific environmental triggers the ALJ found impacted Marcie's migraines, nor how the RFC would accommodate these.

[15] At the hearing, Marcie testified that she had a "skull crushing" headache three times a week, where she was able to do nothing. R. 50–51.

To justify discounting Dr. Ball's opinion, which imposed lifting, standing, walking, and sitting limitations, and found Marcie would miss work more than three times a month, need additional breaks, and be off task more than 30% of the workday, the ALJ wrote:

> Dr. Ball's opinion . . . is more restrictive than what is supported by the objective evidence. Specifically, the lifting, standing, walking, and sitting limitations outlined above are inconsistent with the results of routine musculoskeletal and neurological examinations, as well as [Marcie's] own reports of daily tasks she performs which range from caring for her personal needs to managing her family's finances.

R. 21. In support, the ALJ cited, without explanation, to the physical and psychological consultative examinations, the single medical record from Dr. Tanner, already discussed above, and 31 pages of records from the Jefferson Surgical Clinic. R. 21. However, the ALJ completely failed to address Dr. Ball's opinion regarding Marcie's missing work, being off task, and needing breaks, all which Dr. Ball attributed to her migraines. Thus, I am left to guess why the ALJ discounted Dr. Ball's conclusions regarding the limitations caused by Marcie's migraines, which simply compounds similar issues regarding the ALJ's discussion of Dr. Tanner's opinion.

I recognize that it is not my function to conduct a blank slate review of the evidence by reweighing conflicting evidence, determining credibility, or substituting my judgment for the ALJ's when "reasonable minds could differ." See Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012); Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). In fact, I am precluded from doing so; it is the duty of the ALJ to explain the basis for his opinion. Here, however, ALJ did not adequately explain his decision to discount Drs. Tanner and Ball's opinions on Marcie's limitations, including because he did not adequately consider the factors outlined in 20 C.F.R. § 416.927(c)(2), or justify his decision with specific reasons, such as a detailed discussion of contrary evidence. See Monroe, 826 F.3d at 189 (emphasizing that the ALJ must "'build an accurate and logical bridge from the evidence to his conclusion') (quotation omitted); Patterson

v. Commissioner of Social Security, 846 F.3d 656 (4th Cir. 2017) (admonishing ALJ's to "show your work"). Accordingly, I conclude that substantial evidence does not support the ALJ's decision to discount the opinions of Drs. Tanner and Ball.

Because I find that remand is warranted based on the ALJ's failure to adequately explain his decision to discount the opinions of Marcie's treating physicians, Marcie's additional allegations of error will not be decided. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

## CONCLUSION

It is **RECOMMENDED** that an order be entered **DENYING** defendant's motion for summary judgment, **GRANTING IN PART** plaintiff's motion for summary judgment, and **REMANDING** this case to the Commissioner.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: July 21, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge